H. H. HAYDEN v. MARY H. GREEN *et al.*

No. 13,143.    (71 Pac. 236.)

SYLLABUS BY THE COURT.

CORPORATIONS—*Promoters.* Promoters of corporations occupy fiduciary relations to the company. If stock subscriptions are secured by their fraudulent acts they must account therefor.

Error from Marshall district court; W. S. GLASS, judge. Opinion filed January 10, 1903. Affirmed.

STATEMENT.

ON January 17, 1893, a corporation known as the Blue Rapids Company was organized under the laws of the state of West Virginia, with an authorized capital stock of $500,000. Six days later a meeting of the incorporators was held which was attended by plaintiff in error and Messrs. Yurann, Braine, Fondey, and Lyman. At this meeting the amount of the capital stock was fixed at $250,000. The directors met on the same day and elected Charles R. Bull president, and H. H. Hayden secretary and treasurer. At this time Hayden was the owner of several pieces of real estate in and near the town of Blue Rapids, in this state, designated on the trial as the Stetson, Bivens and Cushing properties. He had also obtained from one Doctor Seward the right to control and sell a hotel property in the town of Blue Rapids, known as the Hayden hotel. Jason Yurann had been the agent of Hayden to sell these properties for some time prior to 1892, when a disagreement arose between them, resulting in a lawsuit, brought by Yurann against Hayden, to recover loss of profits in the sale of the land. A settlement of this claim followed, after Yurann had made it appear to

Hayden that a corporation could be formed, and sub-
scribers to its stock obtained who would pay in suffi-
cient money to buy Hayden's property.   It was
finally agreed that Hayden should receive $20,000 in
cash and $5000 in preferred stock in the company to
be formed, in payment for his land.

At the first meeting of the stockholders of the cor-
poration the directors were authorized to make con-
tracts for the purchase of property and to pay therefor
in cash or stock.   On the same day the directors met.
Messrs. Hayden, Bull, Lyman and Braine were pres-
ent.   Yurann offered to subscribe for nine hundred
and ninety-five shares of the common stock of the
par value of $99,500, and for one thousand shares of
preferred stock of the par value of $100,000, and pay
for it in property at Blue Rapids.   On motion of
H. H. Hayden, this offer was accepted.   At this time
Yurann was not the owner of any of the property.
He had, however, an option to purchase some land
known as the Robertson farm for $6500, subject to a
$2000 mortgage, for which he paid $1000, and a con-
tract to buy a mill property for $7500 on which he
paid $500.   Yurann was insolvent.

Stock was issued to the amount of $42,400, which
was bought by the purchasers from Yurann, and for
which he received fifty cents on the dollar, or $21,200.
Hayden knew that Yurann was selling stock at the
price mentioned.   No part of the proceeds of this
stock came to the hands of Hayden as treasurer of the
company.   Yurann used $5000 of the proceeds of the
sale of stock in part payment of the Robertson farm,
and $1500 in part payment of the purchase-price for
the mill property, and the balance, or $14,700, was
retained by him, or paid over to Hayden on the con-
tract of purchase of the property owned and controlled

by him, including the hotel. No stock was ever issued to Hayden. Hayden knew that the value of the hotel did not exceed $4500, and that there were unpaid taxes on it amounting to $292.43; that the value of the Stetson, Bivens and Cushing properties was $20,000, subject to an encumbrance in the sum of $6207.94; and Yurann knew the same facts relative to the value of the property.

At the time the decree was entered in the cause, the hotel property had been conveyed by Seward to Yurann for the recited consideration of one dollar, and Yurann had conveyed it to the Blue Rapids Company for a like consideration. No deed has ever passed for the mill property. A deed to Yurann for the Robertson farm is in a bank at Blue Rapids. No deed has ever been delivered from Hayden to the Blue Rapids company for the Stetson, Bivens or Cushing properties, and the legal title thereto remains in him.

As an inducement to the subscription of stock, Yurann had an illustrated prospectus printed, containing reasons why investors should purchase stock in the company. There is a photographic view of a mill, and below it these words: "The large, flat-roofed, four-story stone mill at the left belongs to the Blue Rapids Company." Again: "In and near this attractive, growing Western town, the 'Blue Rapids Company' has its chief properties. . . ."

"(a). It has about two hundred business and residence lots, worth from one hundred to one thousand dollars each.

"(b). It has over three hundred acres choice improved farm land in and near the city, part of which may be platted whenever desired.

"(c). It has the best hotel in town, with nearly new furniture.

"(d). It has at the water-power, ready for use, a

splendid four-story stone mill building, which cost upwards of twenty thousand dollars.

"(e). It owns the superb stone dam and all the water-power, etc.

"(f). It owns magnificent gypsum beds, nine feet thick, extending under many acres of its land— enough to keep a mill with a daily capacity of one hundred tons at work for one hundred years. . . . When this grand property shall be developed, as it is the object of this corporation to develop it, there can be no doubt that it will be worth more than a million of dollars."

Again:

"The annual rental from the water-power, when used, and the revenue from the plaster business will pay a large interest on a million dollars."

Further over in the prospectus there are statements somewhat in contradiction of the fact that the company at the time owned this property. For example, it is said:

"No stock will be sold for less than par; except this first 1000 shares of preferred stock. When this issue has been paid for, the whole of this great property will belong to the company, free and clear."

The stockholders (plaintiffs in the court below) testified that a copy of this prospectus was presented to them by Yurann before they subscribed for the stock, accompanied by the statement that the Blue Rapids Company owned the property described therein. Yurann did not disclose to these parties that the stock was being sold by him to them, but represented that they were subscribing for stock to be issued directly by the company.

The court found expressly that "Hayden and Yurann were confederates and associates in all that was done by them or either of them in the organization of

said corporation." It was also found that Braine, Fondey and Lyman were interested in the corporation in a merely nominal way and acted purely as organizers, through the solicitations of Yurann or Hayden, or both; that no meeting of the stockholders has ever been held since the 23d day of January, 1893, and that the company is insolvent.

Conclusions of law made by the court were, in substance, as follows:

1. The contract between Hayden and Yurann for the purchase of the Stetson, Bivens, Cushing and hotel properties for $25,000 in cash and $5000 in stock was not entered into in good faith, but was part of an agreement for the organization and promotion of the Blue Rapids Company, and at the time of the stockholders' and directors' meeting Hayden and Yurann were promoters of the company.

2. The Stetson, Bivens and Cushing properties belong, as against Hayden and Yurann, to the Blue Rapids Company, and neither Hayden nor Yurann is entitled to share in said property until the holders of the stock in the company shall have recovered the amount paid by them for stock of the company. The corporation is entitled to an accounting with Yurann. Plaintiffs are entitled to a winding-up of the affairs of the corporation through the receiver, and to a sale of its assets.

3. Hayden and Yurann are chargeable with $14,700 in money, arising from the sale of stock. The value of the property, for which $14,700 is a part of the purchase-price, being the Stetson, Cushing, Bivens and hotel properties, is $24,500. The company is entitled to a credit upon such purchase-price of $2207.95 for back taxes upon the Stetson property and of $292.43 for taxes upon the hotel property,

and of $4000 for the mortgage on the Stetson property. Hayden is entitled to stock in the company in an amount sufficient, at fifty cents on the dollar, to net him $2500.

4. The deed from Seward to Yurann for the hotel property belongs to the company. Any interest of Yurann in the company should be subordinated to the interest of the stockholders.

5. When Yurann made his offer to the directors of the company to transfer the property to the company, in consideration of 1000 shares of preferred stock and 995 shares of common stock, Hayden, who was the owner of a portion of said property, was present and heard the offer made, and knew that the properties offered included his own property, and he made the motion to accept the offer, and is now estopped from asserting title to the property as against the company, and is estopped from asserting a lien upon said property for any portion of the unpaid purchase-price, as between him and Yurann.

6. Hayden is not entitled to recover any sum from the Blue Rapids Company except the sum of $1296, which shall be a lien upon the property ahead of the interest of the stockholders.

From a decree entered, following these conclusions of law, Hayden has come here by proceedings in error.

*E. A. Berry,* and *Gregg & Gregg,* for plaintiff in error.

*J. G. Strong,* and *Gleed, Ware & Gleed,* for defendants in error Mary H. Green, Lavinia Green, Ira H. Green, and Mary E. Bull.

14—66 KAN.

The opinion of the court was delivered by

SMITH, J. : This was a suit brought by Mary H. Green and two others, holding shares of the capital stock of the Blue Rapids Company, for an accounting between the corporation and H. H. Hayden and Jason Yurann, for a winding-up of its affairs, and an equitable adjustment of the rights of the stockholders. Defendants below, with the exception of Hayden, made default.

Counsel for plaintiff in error complain of the trial court in finding that Hayden was a promoter of the company. We have no difficulty in sustaining the court below on this question. No person connected with its organization was more active in securing a charter or more constant in attendance at the meetings of the incorporators and directors. On his motion, stock of the face value of $199,500 was issued to Yurann at a time when the latter was insolvent.

Charles R. Bull, president of the company, testified that he was elected with the understanding that he was to resign as soon as some other person could be secured to fill his place. He subscribed for $5000 in par value of the stock, but paid nothing for it, and it was never issued to him. He testified as follows :

"H. H. Hayden and Jason Yurann seemed to be, and they were in fact, the company. Jason Yurann told me that he had sold stock for the company to Mary H. Green, Lavinia Green, Ira H. Green, and Mary E. Bull, at about the time he sold it. These several certificates of the plaintiff were sent to me to be signed by H. H. Hayden. I signed them, and, my recollection is, delivered them to the plaintiff in behalf of the said Blue Rapids Company. It was never represented to me that I was selling or delivering stock that belonged to Jason Yurann individually, but, on the contrary, I was delivering stock of, and

for, the Blue Rapids Company. I delivered it as its president, and I understood from Hayden and Yurann that the company was paid for this stock, and paid by the plaintiffs.''

A part of the stock which Yurann subscribed for was sold to the plaintiffs below under representations, both printed and oral, which were deceptive and fraudulent.

It is quite apparent that the corporation was formed chiefly for the purpose of buying Hayden's real estate. He and Yurann were the active spirits in its organization, and there is ample evidence in the record before us that ''Hayden and Yurann were confederates and associates in all that was done by them or either of them in the organization of the company.''

Plaintiff in error, who owned the Stetson, Bivens and Cushing properties, was present, when Yurann proposed to pay for the stock issued to him by a transfer of property to the corporation. Hayden knew that a large part of the consideration which Yurann was to give for this stock consisted of real estate which he (Hayden) owned, and, knowing this, introduced a resolution at a directors' meeting that Yurann's offer be accepted. This resolution was adopted. Being a promoter, Hayden was bound to exercise good faith in his dealings with the corporation and its stockholders.

''The subscriptions of the shareholders are made upon the trust that the promoters are men of rectitude and business sagacity, who will use their knowledge and exercise their control over the enterprise, for the benefit of the company.'' (Mor. Priv. Corp., 2d ed., § 545. See, also, *The South Joplin Land Co. v. Case,* 104 Mo. 572, 16 S. W. 390.)

The court below, in making an accounting between Hayden and the Blue Rapids Company, credited

him with the value of the Stetson, Bivens and Cushing properties, amounting to $20,000, and with the value of the hotel property, amounting to $4500, making a total of $24,500. Hayden was charged with money received from the sale of stock, except what was paid upon the Robertson farm and mill properties. The receipts from the sale of stock amounted to $21,200. There was paid on the Robertson farm and mill properties $6500. Hayden was therefore charged with $14,700. He was also charged with taxes which were a lien on the Stetson, Bivens and Cushing properties at the time of the incorporation of the company, amounting to $2207.95; with taxes which were a lien on the hotel property, at that time amounting to $292.43; with the amount of the mortgage on the Stetson property, amounting to $4000; and with the $5000 stock which he agreed to take as part of the purchase-price of his property. As the holder of this $5000 of stock, the court decreed Hayden to share in the proceeds of the assets of the company. He was charged with this stock at the rate of fifty cents on the dollar, making the amount $2500. The total charge against Hayden is $23,-700.38. The total amount of his credit is $24,500, and the difference is $799.62, which was the balance found by the court to be due him in January, 1893. This sum, with the interest, amounts to $1296 at the date of the trial of this case, and for that sum Hayden was given a lien on the property.

Hayden, being a promoter, stood in a fiduciary relation to the company which was his creature. Acting in concert with Yurann, and being, as the court found, a confederate in all that was done by him, there is no principle of equity which will permit him to profit by a violation of his trust. Under the ac-

counting had, Hayden received at the hands of the trial court all that he could justly claim. We have examined into the numerous errors claimed to have been committed by the trial court but find nothing which will justify a reversal of the cause.

The judgment of the court below will be affirmed.

All the Justices concurring.