TEGARDEN v. BIG STAR ZINC COMPANY.

Opinion delivered March 7, 1903.

CORPORATION—FIDUCIARY RELATION OF PROMOTER—SECRET PROFITS.—
The owner of land made an agreement with plaintiffs and M., who was associated with plaintiffs, that they might sell his land for $5,000, of which sum such owner was to receive $2,500, and the remainder to be divided between plaintiffs and M. With the assent of plaintiffs, M. entered into an agreement with a number of persons whereby he and they organized a corporation for the purpose of buying the land for $5,000, M. representing to them that the land could not be purchased for a less sum, and that he was to receive a commission of 10 per cent. for effecting the sale. In a suit by plaintiffs against the corporation to recover their share of the $2,500, *held*, that M. occupied toward the corporation a confidential relation which precluded him from receiving a greater commission for effecting the sale than ten per cent.

Appeal from Marion Circuit Court in Chancery.

ELBRIDGE G. MITCHELL, Judge.

Affirmed.

*S. W. Woods* and *J. C. Floyd* for appellants.

Fraud is never presumed, but must be proved. 11 Ark. 378; 38 Ark. 419; 17 Ark. 151; 20 Ark. 216; Beach, Mod. Eq. Jur. §§ 71-2; 10 Bush (Ky.), 519. Notice to a director of a corporation is notice to the corporation. 1 Pet. 309; 4 Paige, Ch. 127. As is also notice to an agent. 1 Mor. Private Corp. §§ 229, 540;

36 Am. Dec. 186; 8 Fed. 1. Any facts that may come to the knowledge of an agent of a corporation sufficient to put a prudent person on notice are sufficient to charge the corporation. 23 Ark. 744; 32 Ark. 251; 58 Ark. 84, 446; 49 Ark. 336; 52 Ark. 11.

*W. F. Pace* and *Frank Pace,* for appellees.

If at the time of the purchase the parties occupy a fiduciary relation to the future company, they can make no profit out of the purchase and sale. 1 Beach, Mod. Eq. Jur. § 134; 2 Cook, Corp. § 651; 107 Fed. 340; 52 L. R. A. 724; 1 L. R. A. 664; 148 N. Y. 471.

Battle, J. On the 5th day of February, 1900, Tegarden Bros. commenced a suit in equity in the Marion circuit court against the Big Star Zinc Company, H. M. Bardeen, and Merle McFarland, and alleged in their complaint therein substantially as follows: That they are a firm composed of W. S. Tegarden, R. B. Tegarden and B. F. Tegarden, formed for the purpose of doing a general real estate and mining business in Marion county, in this state. That the Big Star Zinc Company is a corporation organized under the laws of the state of Connecticut, and is doing business in the state of Arkansas. That, on or about the 4th day of October, 1897, H. M. Bardeen, being the owner of the possessory right to certain mineral lands in Marion county, authorized them, Tegarden Brothers, to sell the same for $2,000, and agreed to pay them for selling all for which they sold the same above that amount. That thereafter Merle McFarland, representing that he could be of assistance in making a sale, proposed to aid them, provided they would divide the profits with him; that plaintiffs accepted the proposition; and that afterwards they, plaintiffs and McFarland, sold the lands to the defendants, Big Star Zinc Company, at and for the price of $5,000, of which $3,000 was to be paid in cash, and the remainder of $2,000 one year after day of sale. That the $3,000 were paid, and the Big Star Zinc Company executed to Bardeen its note for the $2,000, and six per cent. per annum interest thereon, due and payable one year after the 4th day of April, 1898. That it was agreed by and between the plaintiffs and the defendants Bardeen and McFarland that the purchase money should be divided as follows: $2,500 to be paid to Bardeen and $2,500 to be equally divided between the plaintiffs and McFarland. That plaintiffs have received $500, and a balance of

$750 and interest remains due and unpaid, and was included in the note executed by Big Star Zinc Company to Bardeen. That the defendants, on the 28th of November, 1898, conspired to cheat and defraud them out of the $750, and that, in furtherance of their conspiracy, the defendants Bardeen and McFarland surrendered the note to the Big Star Zinc Company, well knowing that plaintiffs owed $750 of the note and interest thereon, and that the same had not been paid. That they were a lien on the lands sold for the payment of the amount due them; and they asked for a judgment for that amount, and that the lands be sold to pay the same.

Defendants Bardeen and McFarland failed to answer the complaint. Defendant Big Star Zinc Company answered, and admitted the purchase of the lands from Bardeen and the execution of the note; alleged that they had paid the purchase money, and denied all the other allegations in plaintiffs' complaint.

Upon a hearing of the cause the court dismissed the complaint as to the Big Star Zinc Company, because there was no equity in it, and rendered judgment in favor of the company for costs; and the plaintiffs appealed.

The facts in the case are, substantially, as follows: In the spring of 1896 defendant Bardeen authorized the appellants, Tegarden Bros., to sell certain mineral lands. In the summer of the same year they (appellants) agreed with the defendant McFarland that, if he would assist them in selling the land, they would divide with him the commission received for selling. In the fall of 1896 appellants received a letter from McFarland, saying that he was about to organize a company for the purpose of purchasing the land. He failed in this undertaking. After this, in the spring or summer of 1897, they received another letter from him, saying that he was about to organize a company in the east to purchase. In the latter part of September, 1897, he informed the appellants that he had formed the company. He then saw Bardeen, who agreed to give him the privilege of purchasing the land at the price of $2,000, and, for a specified consideration, gave him six months in which to make the purchase. Thereafter, on or about the 6th of October, 1897, McFarland and Bardeen entered into a contract in writing by which Bardeen, for a valuable consideration, agreed that McFarland should have the option of purchasing the land at any time within six months at the price of $5,000. This contract was made with the consent of Tegarden Brothers, but they were not named in it. It was first intended that

the option should be given to the Big Star Zinc Company, but its organization was not then complete, and McFarland was substituted.

Outside of the written contract, it was understood and agreed, by and between Bardeen, on one part, and McFarland and Tegarden Brothers, on the other part, that $2,000 of the $5,000 should be paid to Bardeen for the land, and the remainder should be paid as commissions for selling. Five thousand dollars were named in the written contract as the purchase price, so that persons buying from McFarland and appellants would not know what was paid them for commissions.

After this the organization of the Big Star Zinc Company was completed under the laws of the state of Connecticut. In the progress of its formation McFarland represented to each member that the said lands were valuable, and could be purchased for $5,000, and nothing less, and that, if he sold the same, he was to receive ten per cent. commissions for selling. When fully organized, the company, he being a member, authorized him to purchase the lands for it at the price of $5,000, which he did. It paid $3,000 in cash, and executed its note to Bardeen and McFarland for the other $2,000, which were deposited in a bank at Yellville, in this state. The purchase not having been made within the six months, Bardeen demanded $2,500, instead of $2,000, as his portion of the purchase money, which was conceded. Accordingly $2,000 of the money paid were retained by Bardeen, and $500 were paid to McFarland, and the same amount was received by Tegarden Brothers, and it was agreed that $500 of the $2000 for which the note was given were the property of Bardeen, and that the remainder belonged to McFarland and Tegarden Brothers in equal parts, making $750 the portion of Tegarden Brothers.

The bank delivered the note to the Big Star Zinc Company, it being authorized to do so by McFarland and Bardeen. The consideration therefor received by Bardeen was the note of the company for $500. The evidence does not show what McFarland received. The note was delivered without the consent or knowledge of Tegarden Brothers. The company had no notice that they had any interest therein until after the delivery. This suit was instituted to recover the $750 of the note claimed by the appellants. Are they entitled to recover?

In *Densmore Oil Co. v. Densmore,* 64 Pa. St. 43, Justice Sharswood, in delivering the opinion of the court, said: "There are two

principles applicable to all partnerships or associations for a common purpose of trade or business, which appear to be well settled on reason and authority. The first is, that any man or number of men, who are the owners of any kind of property, real or personal, may form a partnership or association with others, and sell that property to the association at any price which may be agreed upon between them, no matter what it may have originally cost, provided there be no fraudulent misrepresentation made by the vendors to their associations. They are not bound to disclose the profit which they may realize by the transaction. They were in no sense agents or trustees in the original purchase, and it follows that there is no confidential relation between the parties which affects them with any trust. It is like any other case of vendor and vendee. They deal at arm's length. Their partners are in no better position than strangers. They must exercise their own judgment as to the value of what they buy. * * * The second principle is, that where persons form such an association, or begin or start the project of one, from that time they do stand in a confidential relation to each other, and to all others who may subsequently become members or subscribers, and it is not competent for any of them to purchase property for the purposes of such a company, and then sell it at an advance without a full disclosure of the facts. They must account to the company for the profit, because it legitimately is theirs."

While promoters of a corporation are not its agents, they assume a relation of trust and confidence towards those whom they invite to join them in the contemplated enterprise by becoming members of the corporation. Such relation "requires the same good faith on their part which the law exacts of directors of corporations and all other fiduciaries." Like directors and other officers of corporations, they can make no profit out of such relation except openly and with the consent of those to whom they are so related. If they take advantage of their position, and make a secret profit out of their purchases for the corporation or corporators, the profit is the property of the proposed corporation when organized, and they may be compelled to account for it in any proper proceeding. 7 Thompson, Corporations, § 8286; 1 Clark & Marshall, Private Corporations, § 110b, and cases cited.

In *Redhead* v. *Parkway Driving Club,* 148 N. Y. 471, Redhead and Suydham brought an action against Burrill to recover the sum of $2,000, claimed to be due to them, as partners, from him

for services as real estate brokers upon the sale of certain real estate. The defendant, Burrill, admitting his liability to some one for the commissions claimed, applied to the court for permission to pay the money into court for discharge from liability to anyone for the same. It appearing that the Parkway Driving Club, a corporation, claimed the money, he was allowed to pay the money in court, and the Parkway Driving Club was made the defendant in the action. It seems that plaintiff Suydham was a member of the club, and was appointed a member of a committee to purchase real estate for the club; that he accepted the appointment, and, acting in that capacity, purchased the real estate of Burrill, with the understanding that $2,000 of the money paid by the club for the property should be paid to his firm, plaintiffs, as commissions for selling. The court held that the club was entitled to the money; that Suydham occupied relations of a confidential and fiduciary character to it, and could not, in purchasing the property for the club, reserve a benefit to himself or to a firm of which he was a member.

In the opinion of the court in the case it is said: "It is urged in support of the appeal that the services of Suydam belonged to the firm, and that he could not, by any arrangement with the defendant, deprive the partnership of which he was a member of the broker's commission arising from the sale of the property. If it were a question simply between him individually and the firm, that proposition might be correct. It might even be conceded that, upon an accounting between the plaintiffs as partners, he would be chargeable with the commissions, and still it would not follow that the fund in question belonged to the firm as against the claim of the defendant. The partnership relations of Suydam cannot change his confidential and fiduciary obligations to the defendant. He was competent to become a member of the corporation and of assuming duties and obligations towards it which involved relations of trust and confidence. He could and did place himself in relations with the defendant which precluded him from reaping any private benefit from the transaction, either individually or as a partner. Moreover, upon the findings, he assumed these duties upon the express understanding that his services should inure to the benefit of the corporation for which he acted. If the arrangement which he was competent to make, and did make, with the defendant was in any sense unjust to his partner, that may be a matter for adjustment between themselves, but it cannot affect the

defendant's rights under the contract for the purchase of the land made in its behalf by him."

McFarland occupied the same relation of trust and confidence to the Big Star Zinc Company in this case as Suydam sustained to the Parkway Driving Club in that case. In organizing the Big Star Zinc Company for the purchasing of the lands from Bardeen, McFarland represented the Tegarden Brothers and himself. He did so with their knowledge and approval. This was a means devised by them for the purpose of selling the lands. The appellants thereby authorized McFarland to assume a relation to the Zinc Company which deprived him of all secret profits, and entitled it to the lands at what Bardeen was to receive for them, free of all charges for selling, unless it be the ten per cent. commission which he said he was to get. The Zinc Company authorized him to purchase the lands for it, and he was without authority to impose upon it the burden of paying any amount for the lands in addition to what the vendor was to receive as the purchase price. He could not bind the Zinc Company to pay the $2,500, the secret profit which he and Tegarden Brothers were to receive as commissions for selling the lands. He could not act as agent for the purchaser and seller at the same time. If Tegarden Brothers are entitled to recover in this action, it must be under the contracts made by McFarland with Barden and the Zinc Company. As the Zinc Company was entitled, under these contracts, to the lands at what Bardeen received for them, $2,500, it follows that the Tegarden Brothers have no right to recover of the Zinc Company any sum whatever.

Decree affirmed.