## CUSHION HEEL SHOE COMPANY *v.* HARTT.

[No. 22,493. Filed January 29, 1914.]

1. CORPORATIONS.—*Contracts by Promoters.—Validity.—Ratification.*—While under ordinary circumstances a corporation cannot be sued successfully on a contract made for its benefit by its projectors before its incorporation, such contracts are not void, but voidable, and in so far as they are not *ultra vires* they may become binding on the corporation by its ratification thereof either express or implied. p. 169.

2. CORPORATIONS.—*Contracts by Promoters.—Implied Contracts.*—The rule that a corporation may be bound, like any individual, by an implied contract is limited in its application to contracts in which the promoters of such corporation are not interested. p. 169.

3. CORPORATIONS.—*Contracts by Promoters.—Burden of Proof.*—While a corporation may purchase property from its promoter and pay him for his services, the burden is on the promoter to show that he acts openly and in good faith in such transactions. p. 169.

4. CORPORATIONS.—*Promoters.—Fiduciary Relationship.*—A promoter, in bringing about the organization of a corporation, and securing stock subscriptions, occupies a fiduciary relationship towards the corporation, the stockholders, and those who are expected to buy stock, and where he expects to be paid for his services that fact should be disclosed to them in advance. p. 169.

5. CORPORATIONS.—*Promoters.—Services.—Ratification.*—In the absence of statutory or charter provisions, a corporation will be held liable for services rendered by its promoters before incorporation only when, by express action taken after it has become a legal entity, it recognizes or affirms such claim. p. 171.

From Superior Court of Allen County; *E. O'Rourke,* Special Judge.

Action by Obder M. Hartt against the Cushion Heel Shoe Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Reversed.*

*Owen N. Heaton, Benjamin F. Heaton, James R. Harper, John W. Eggeman, Frank S. Roby, Ward H. Watson* and *Elias D. Salsbury,* for appellant.

*Albert E. Thomas* and *Howard L. Townsend,* for appellee.

SPENCER, J.—It appears from the record in this case that in April, 1909, appellee, who was experienced in the manufacture of shoes, inserted in a shoe journal an advertisement for a shoe factory to locate in the city of Ft. Wayne. Among the answers which he received thereto was one from a man named Johnson who was the patentee of a certain cushion heel shoe. Johnson came to Ft. Wayne and with him appellee went to the president of the Commercial Club whom they interested in the proposition of starting appellant company. Subscription lists were prepared and appellee started out to get subscribers to the undertaking. He testified that Johnson then promised him the position of superintendent when the factory should be established and also promised that he, appellee, should be paid for his time and money spent in securing the stock subscriptions; that after the company was organized appellee talked with several of the directors and officers of appellant company and told them that he expected to be paid for his services; that one of the directors said to appellee: "I believe you should be compensated. I have told the people, the directors, to settle with you." No testimony was introduced to show that the board of directors ever acted on appellee's claim but it is his contention that by accepting the results of his services and receiving the benefits thereof, appellant is now bound on an implied contract to pay for such services.

It is certain that, under ordinary circumstances, a corporation cannot be sued successfully on a contract made for its benefit by its projectors before its incorporation. Contracts of this character, however, are not void but voidable and it is well settled in nearly all jurisdictions that in so far as they are not *ultra vires,* such contracts may become binding on the corporation if ratified by it, either expressly or by implication, after its organization. *Smith* v. *Parker* (1897), 148 Ind. 127, 133, 45 N. E. 770; *Bruner* v. *Brown* (1894), 139 Ind. 600, 602, 38 N. E. 318; *Davis & Rankin Bldg., etc., Co.* v. *Hillsboro Creamery Co.* (1893), 10 Ind. App. 42, 37 N. E. 549; *Tuttle* v. *Tuttle Co.* (1906), 101 Me. 287, 292, 64 Atl. 496, 8 Ann. Cas. 260; *Battelle* v. *Northwestern, etc., Pav. Co.* (1887), 37 Minn. 89, 33 N. W. 327. But the rule that a corporation may be bound, like any individual, by an implied contract is limited in its application to contracts in which the promoters of such corporations are not interested.

The law does not prohibit a promoter from dealing with his company and a corporation has the right to purchase property from its promoters and to pay them for their services if it so elects, but the burden is on the promoter to show that he acts openly and in good faith in such transactions. A promoter of a corporation who brings about its organization and aids in securing subscriptions thereto is considered in law as occupying a fiduciary relationship toward such corporation and toward its stockholders. *Chandler* v. *Bacon* (1887), 30 Fed. 538, 539; *Bosher* v. *Richmond, etc., Land Co.* (1892), 89 Va. 455, 461, 16 S. E. 360, 37 Am. St. 879; *Plaquemines, etc., Co.* v. *Buck* (1893), 52 N. J. Eq. 219, 240, 27 Atl. 1094; *Burbank* v. *Dennis* (1894), 101 Cal. 90, 97, 35 Pac. 444; *Yale Gas Stove Co.* v. *Wilcox* (1894), 64 Conn. 101, 29 Atl. 303, 25 L. R. A. 90, 42 Am. St. 159. It will be observed that this relationship is two-fold. It extends toward the corporation as a separate legal entity and charges the promoter

with fair dealing in respect to corporate property. *Central
Land Co.* v. *Obenchain* (1895), 92 Va. 130, 22 S. E. 876;
*South Joplin Land Co.* v. *Case* (1891), 104 Mo. 572, 578, 16
S. W. 390; *Hayden* v. *Green* (1903), 66 Kan. 204, 71 Pac.
236; *Old Dominion, etc., Co.* v. *Bigelow* (1905), 188 Mass.
315, 74 N. E. 653, 108 Am. St. 479; *Tegarden* v. *Big Star
Zinc Co.* (1903), 71 Ark. 277, 72 S. W. 989. It extends also
toward the stockholders in respect to their property rights
in their stock and toward those who, it is expected, will buy
such stock. *Dickerman* v. *Northern Trust Co.* (1900), 176
U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423; *Walker* v. *Pike
County Land Co.* (1905), 139 Fed. 609, 71 C. C. A. 593;
*Hayward* v. *Leeson* (1900), 176 Mass. 310, 57 N. E. 656;
*Goodwin* v. *Wilbur* (1902), 104 Ill. App. 45; *New York,
etc., R. Co.* v. *Ketcham* (1858), 27 Conn. 170; *Colton Imp.
Co.* v. *Richter* (1898), 55 N. Y. Supp. 486, 26 Misc. 26;
*Fred Macey Co.* v. *Macey* (1906), 143 Mich. 138, 106 N. W.
722, 5 L. R. A. (N. S.) 1036; *Hinckley* v. *Sac, etc., Line Co.*
(1906), 132 Iowa 396, 107 N. W. 629, 119 Am. St. 564. Ap-
plying this latter rule the Supreme Court of Massachusetts
uses this language in *Hayward* v. *Leeson, supra,* p. 320:
"The persons to whom the promoters owe the duty which
they owe by reason of their fiduciary relation are the per-
sons who put their money into the enterprise at the invita-
tion of the promoters, that is to say, the future stockholders.
It is to the future stockholders that the promoters must
make the disclosure of the remuneration which is, or is to
be, paid to them, and it is the consent of the future stock-
holders that must be obtained to make that payment valid;
if the promoters undertake to make to themselves remunera-
tion for their services as promoters without making a full
disclosure of the fact to the future stockholders, their prin-
cipals, and getting their consent, they are guilty of a fraud.
Promoters can make the necessary disclosure of the re-
muneration they stipulate for by including in the prospectus
a full statement thereof; if such a statement is not made

therein, they cannot honestly take any remuneration for promoters' services, unless it is voted by the stockholders after the capital stock has been taken by the public.''

In the case of *New York, etc., R. Co.* v. *Ketcham, supra,* p. 179, the court said: ''We are aware that it is no uncommon practice for corporations to assume and pay these preliminary and antecedent charges, after the company has become organized, but we do not see how the company, if it should object, could be compelled to pay them, and in some cases it would be most inequitable to require it. Can a few persons combine for their own interest to get up a railroad—agree with one of their number to give him a large commission or bonus for every stockholder he can allure into the company—and privately make this commission or bonus a charge on the corporation when formed? This would be a breach of faith towards honest and unsuspecting stockholders who pay the charter price for their stock and expect to take it clear of all incumbrance. * * * It is soon enough for corporate bodies to enter into contracts encumbering their property, when they are duly organized according to their charters and have their chosen and impartial directors to conduct their business.'' In *Rockford, etc., R. Co.* v. *Sage* (1872), 65 Ill. 328, 332, 16 Am. Rep. 587, the court held that it was ''unjust to stockholders, who subscribe and pay for stock in a company, that their property should be subject to the incumbrance of such claims, and which they had no voice in creating.'' See, also, *Tuttle* v. *Tuttle Co., supra; Marchand* v. *Loan and Pledge Assn.* (1874), 26 La. Ann. 389; 1 Thompson, Corporations (2d ed.) §88; 10 Cyc. 264.

We are aware that cases may be found which seem to sustain appellee's position but, as is suggested in 10 Cyc. at page 265, ''it is difficult to understand how the corporation could be estopped by accepting benefits which it had no power to reject, without uncreating itself.'' We believe that the better reason and the weight

of authority support the holding that, in the absence of statutory or charter provisions, a corporation will be held liable for services rendered by its promoters before incorporation only when, by express action taken after it has become a legal entity, it recognizes or affirms such claim. The evidence before us does not indicate such an affirmance. In *Tift* v. *Quaker City Nat. Bank* (1891), 141 Pa. St. 550, 21 Atl. 660, as in this case, it was shown that the plaintiff's claim was brought to the attention of the board of directors after the defendant's incorporation but that no action was taken thereon. The court held that "Mere silence of the board of directors, or failure to object when the claim was mentioned, is not such an act of ratification as will bind the bank."

Judgment reversed.

NOTE.—Reported in 103 N. E. 1063. Reported and annotated in 50 L. R. A. (N. S.) 979. See, also, under (1) 10 Cyc. 262; (3, 5) 10 Cyc. 264. As to promoters and their relation to corporation, see 17 Am. St. 161; 85 Am. St. 385; 4 Ann. Cas. 669; 17 Ann. Cas. 269. On the question of the liability of a corporation on contracts of promoters, see 26 L. R. A. 544.