Fitzpatrick, Respondent, *v.* O'Neill et al., Appellants.

(No. 3,000.)

(Submitted September 20, 1911.   Decided October 21, 1911.)

[118 Pac. 273.]

*Corporations—Transfer of Stock—Equity—Promoters—Issuance of Stock for Services—Legality of Act—Board of Directors—Presumptions—Cancellation of Stock—When Nullity.*

Corporations—Transfer of Stock—Refusal—Equity.
  1.   Where the officers of a corporation wrongfully refuse to recognize and register a valid transfer of stock, and issue a new certificate to the transferee, the party aggrieved may invoke the aid of a court of equity.

Same—Promoters—Issuance of Stock for Services—Legality of Act.
  2.   Where all the holders of corporate stock had knowledge that a certain number of shares were to be issued to the promoters of the company (who were already stockholders and president and secretary, respectively, of the company) for their services in its organization, and agreed that the amount so to be paid was reasonable and none were misled or deceived, the corporation could legally issue the stock.

Same—Issuance of Stock—Action by Board of Directors not Indispensable—Presumptions.
  3.   Though, under section 3833, Revised Codes, the corporate powers, business and property of domestic corporations must be exercised, conducted and controlled by a board of directors, formal action on its part may, even on important matters, be dispensed with where all the shareholders and directors are present and concur in the action taken.   In such a case the board will be presumed to have ratified it, although it in fact did not act affirmatively in the matter.

Same—Presumptions.
  4.   *Held,* under the rule stated in paragraph 3, *supra,* that the action of the stockholders of a corporation at a meeting at which every

outstanding share of stock was duly represented and voted in favor of the issuance of a certain number of shares to the promoters of the company in payment for their services, a majority of the directors being present and assenting, will be deemed to have been ratified by the board of directors, especially in view of the fact that the stock so issued was subsequently twice voted without objection at stockholders' meetings at which the remaining directors were present.

Same—Cancellation of Stock—When Nullity.
5. An attempt to cancel certificates representing corporate stock legally issued upon a sufficient consideration is a nullity.

Same—Coming into Equity "With Clean Hands."
6. The trial court having found all the issues in favor of plaintiff in a suit to compel the officers of a corporation to transfer to him on the books of the company certain shares of its capital stock and issue a new certificate to the transferee, the contention that he was not invoking the aid of a court of equity "with clean hands," *held* without merit.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by J. B. Fitzpatrick against Frank D. O'Neill, J. J. Flanigan, and the Open Range Sheep Company. Plaintiff had judgment. Defendants appeal from the judgment and an order denying their motion for a new trial. Affirmed.

*Mr. M. P. Gilchrist,* for Appellants, submitted a brief and argued the cause orally.

A corporation is not liable to promoters for their services in creating it. "A promoter, though he purport to act on behalf of the projected corporation and not for himself, cannot be treated as agent because the nominal principal is not then in existence; and hence when there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced." (*Weatherford etc. R. Co.* v. *Granger,* 86 Tex. 350, 40 Am. St. Rep. 837, 24 S. W. 795; *Telegraph* v. *Loetscher,* 127 Iowa, 383, 101 N. W. 773, 4 Am. & Eng. Ann. Cas. 667; *Tuttle* v. *George A. Tuttle Co.,* 101 Me. 287, 64 Atl. 496; reported, also, in Volume 8, page 260, Am. & Eng. Ann. Cas., with a profuse note citing a large number of cases.) The author of the note of the same case also says: "The courts of equity jurisdiction also refuse to enforce against a corporation a contract made on its behalf by

promoters, unless there appears to be some sound equitable reason demanding its enforcement."

Stockholders, even if unanimous, cannot sell or give away the corporate property, or make any contract which would be obligatory on the company. Their action is only advisory to the board of directors. (Rev. Codes, sec. 3833; *Sellers* v. *Green,* 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; *Humphreys* v. *McKissock.* 140 U. S. 304, 11 Sup. Ct. 779, 35 L. Ed. 473; *Old Dominion Copper M. & S. Co.* v. *Bigelow,* 203 Mass. 159, 89 N. E. 193.) "Title to corporate assets is in the corporation and not in the stockholders owning the stock therein." (*People's Nat. Bank* v. *Board of Commissioners* (Okl.), 103 Pac. 68.) "The stock in the treasury of the corporation belongs to the corporation." (*Old Dominion Copper M. & S. Co.* v. *Bigelow, supra.*)

A director of a corporation cannot vote at a directors' meeting by proxy, but must be personally present and vote himself. (Conyngton on Corporate Management, 133; Clark & Marshall on Private Corporations, sec. 681, and cases therein cited.)

The great weight of authority is to the effect that a gratuitous issue of stock to the promoters is void upon the existing stockholders and is invalid, and that the company has power to remedy the wrong and cancel the stock, as was done in the case at bar. (*Hughes* v. *Cadena de Cobre Min. Co.* (Ariz.), 108 Pac. 231; 3 Clark & Marshall on Private Corporations, 2067.)

"Statutory and legal remedies must usually be first resorted to and exhausted before resort can be had to equity." (13 Current Law, 1496; 11 Current Law, 1238; 9 Current Law, 1113, citing a large number of cases.) The plaintiff should have exhausted his remedy against C. B. McCarthy, at least, before attacking the company. The evidence shows clearly that McCarthy has sixty-five shares of stock about which there is no dispute, and could be required by a proper action to deliver the twenty-three shares purchased, or he could be required to respond in damages for the value of the stock. The evidence shows that the plaintiff made no demand upon C. B. McCarthy to make the stock good.

*Messrs. Walsh & Nolan,* and *Mr. John E. Corette,* submitted a brief in behalf of Respondent. *Mr. Corette* argued the cause orally.

Action in equity is proper procedure. Where capital stock is purchased as an investment the transferee has a right to commence an action in equity to compel the transfer of the stock, and his action is not necessarily an action at law for damages. We cite and call the court's attention to the following: Clark & Marshall on Private Corporations, pp. 1842, 1843, and cases cited; Morawetz on Corporations, secs. 214–221; Thompson on Corporations, secs. 24, 25; *Cushman* v. *Thayer,* 76 N. Y. 365, 32 Am. Rep. 315; *Krouse* v. *Woodward,* 110 Cal. 638, 42 Pac. 1084; 1 Beach on Corporations, sec. 464; 2 Pomeroy's Equity Jurisprudence, sec. 1402.

Where the incorporators and promoters performed the services and the corporation after its organization entered into an express contract to pay them for such services, and did pay them, then we contend that the contract was legally entered into and fulfilled, and that the corporation had no right to refuse to transfer the stock after it had passed into the hands of an innocent transferee, and we contend that the consideration being on the contract expressly entered into by the corporation several months after its organization is or was on a sufficient consideration and was binding upon the corporation. (See Clark & Marshall on Corporations, 316; *Low* v. *Connecticut etc. Co.,* 45 N. H. 370; *Farmers' Bank* v. *Sm'ih,* 105 Ky. 816, 88 Am. St. Rep. 341, 49 S. W. 810; *Hayward* v. *Leeson,* 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725; *Gilkinson* v. *Third Ave. R. Co.,* 47 App. Div. 472, 63 N. Y. Supp. 792; *Franklin Fire Ins. Co.* v. *Hart,* 31 Md. 59.)

Where all the stockholders of a corporation are present and all the legal directors being stockholders are present and vote as stockholders, and such stockholders unanimously authorize an action, the action is of the corporate character and is binding on the corporation. (3 Thompson on Corporations, 3976; *Burr* v. *McDonald,* 3 Gratt. (Va.) 215; *Eureka Iron Wks.* v. *Bresnahan,* 60 Mich. 332, 27 N. W. 524; *Union Pacific* v. *Chicago etc. Ry. Co.,*

163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; Morawetz on Corporations, secs. 228–623; *Des Moines Gas Co.* v. *West,* 50 Iowa, 16; *People* v. *North R. Sugar Co.,* 121 N. Y. 382, 18 Am. St. Rep. 843, 24 N. E. 834, 9 L. R. A. 33; *State* v. *Standard Oil Co.,* 49 Ohio St. 137, 34 Am. St. Rep. 541, 30 N. E. 279, 15 L. R. A. 145; *Union Loan & Trust Co.* v. *Southern Cal. Motor Road Co.,* 51 Fed. 840; *Jordan* v. *Collins,* 107 Ala. 572, 18 South. 137; *Kenton Furnace R. R. & Mfg. Co.* v. *McAlpin,* 5 Fed. 737; *Smith* v. *Martin,* 135 Cal. 247, 67 Pac. 779.)

Acts of the corporation are ratified by acquiescence, laches or supineness of stockholders. "Proceedings by the directors, or some of them, at an illegal or irregular meeting, may be ratified by them at a subsequent legal meeting, and thereby rendered valid. Or the proceedings may be expressly ratified by the stockholders, or the illegality or irregularity cured by their acquiescence with knowledge of the facts." (3 Clark & Marshall on Corporations, 2089; 10 Cyc. 327; *Woodbridge* v. *Pratt & Whitney Co.,* 69 Conn. 304, 37 Atl. 696; *Farmers' Bank* v. *Smith,* 105 Ky. 816, 88 Am. St. Rep. 341, 49 S. W. 810; *Burr* v. *McDonald, supra.*)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in Silver Bow county to compel the defendants O'Neill and Flanigan, who are president and secretary, respectively, of the defendant corporation Open Range Sheep Company, to transfer to the plaintiff on the books of the company, twenty-three shares of its capital stock theretofore standing in the name of C. B. McCarthy, and to issue to plaintiff a certificate of stock in his own name for said number of shares. The district court found generally in favor of the plaintiff and entered a judgment as prayed for. The cause was tried without the assistance of a jury. Defendants appeal from the judgment and also from an order denying their motion for a new trial. The record is voluminous, but careful examination thereof dis-

closes but few contested questions of fact, all of which are presumed to have been resolved in favor of the respondent.

There is substantial evidence to warrant the following specific findings of fact: In the summer of 1906 the appellant O'Neill owned a sheep ranch near Miles City which was mortgaged; the mortgage was about to be foreclosed, and O'Neill gave to C. B. McCarthy an option to purchase the ranch. McCarthy associated himself with the respondent Fitzpatrick and, after spending some time in perfecting the necessary preliminary arrangements, on November 21, 1906, they organized the Open Range Sheep Company with a capital stock of $95,000, divided into 950 shares of $100 each, and (apparently) five directors; O'Neill received 175 shares of the capital stock for his ranch, and the company assumed his indebtedness; Fitzpatrick and McCarthy, at that time president and secretary, respectively, issued to themselves 345 shares as promotion stock, and each purchased sixty-five shares, paying cash and par therefor. The company then sold to the appellant Flanigan fifty shares of treasury stock for $5,000 in cash. On March 25, 1907, a meeting was held in the office of Judge McHatton at Butte, which meeting was attended by Sydney Sanner, Esq., as attorney for O'Neill; Judge McHatton, who had theretofore been named as a director but who was not a stockholder; McCarthy and Fitzpatrick. The purpose of this meeting was to settle differences which had arisen relative to the 345 shares of so-called promotion stock held by McCarthy and Fitzpatrick. Judge McHatton and Mr. Sanner informed them that they had no right to these shares of stock issued to themselves without authority, but Judge McHatton said that they were entitled to some remuneration for promoting the company. Mr. Sanner said: "They certainly are. What do you think is right?" Fitzpatrick replied: "About fifty shares or $5,000." Mr. Sanner said: "That is very reasonable, and I will advise Mr. O'Neill to do that," also stating that he expected that they would charge $10,000. Someone then suggested that McCarthy write to Flanigan, who was at Hot Springs, Arkansas, relative to the

matter under discussion, and McCarthy immediately wrote a letter, of which the following is a copy:

"March 26, 1907.

"Friend Jerry:

"There will be a meeting of the stockholders of the Open Range Sheep Company, held at its offices in Butte, Montana, for the purpose of electing a board of directors and officers of the company and such other business that might properly come before it. Said meeting to be held within two weeks from this date or as soon as we can get your proxy, which proxy we would like that you send here at the earliest possible date. This meeting was discussed last evening by the directors, that is Judge McHatton, Mr. Fitzpatrick, Mr. Sanner (representing Mr. O'Neill), and myself, and it was the sense that you be written with request that you sign the enclosed proxy for your wife, Mrs. Flanigan, in order that she might vote for you at said meeting, in your stead. The proposition of what would be fair to allow McCarthy-Fitzpatrick for their trouble in getting the property of the company together, and in organizing it, was the opinion of those present that fifty shares would be reasonable for said work, all of which would be satisfactory to us. Now, in order to make this legal it would be necessary for the stockholders to vote this amount of stock to us as compensation for the organization of the company, at a meeting to be held within two weeks. If you think it reasonable you might instruct Mrs. Flanigan to so vote. We have, as you know Jerry, put in all of our time in the organization of this company, and have paid in cash for shares of stock we have. We have never made any charge for looking after the business thus far, and we thought it only fair that the company allow us a reasonable amount for our services rendered. This will, of course, be in stock. The company is in excellent shape, and will, I am sure, be able to pay a handsome dividend on the investment this year. Trusting that you will give the matter of signing the enclosed

proxy your early attention, in order that it will reach us at the earliest possible date, we are,

                    "Respectfully yours,
                        "McCarthy–Fitzpatrick, Inc.
                            "Per C. B. McCarthy."

Inclosed was a blank proxy, drawn by Judge McHatton. Flanigan replied: "I have instructed Mrs. Flanigan that you are [or] Fitz would instruct her Mc what is right is right please find enclosed proxy as you requested." Inclosed in this letter was the power of attorney or proxy, running to Mrs. Lou Flanigan and duly signed by her husband. By this power of attorney, authority was expressly delegated to vote in favor of the issuance of twenty-five shares of stock each to McCarthy and Fitzpatrick. The 345 shares of promotion stock held by McCarthy and Fitzpatrick were surrendered and canceled on March 26, 1907. On April 6, 1907, a directors' meeting was held in Butte, at which Fitzpatrick, O'Neill and McCarthy were present; at this meeting the matter of giving McCarthy and Fitzpatrick twenty-five shares of stock each for promoting the company was discussed; a stockholders' meeting was subsequently held on the same day. The following is a minute of what took place at this stockholders' meeting:

"Minutes of a special meeting of the stockholders of the Open Range Sheep Company, held at its offices in Butte, Montana, this 6th day of April, 1907.

"Those present: F. D. O'Neill, representing 175 shares of stock. J. J. Flanigan (by proxy Mrs. Lou Flanigan) representing 50 shares. J. B. Fitzpatrick, representing 65 shares; and C. B. McCarthy, representing 65 shares.

"The following business to be acted on: F. D. O'Neill moves that the company deliver to C. B. McCarthy and J. B. Fitzpatrick 50 shares of the capital stock of the Open Range Sheep Company, to be in full payment for all services rendered in promotion of the said company. J. J. Flanigan (by proxy Mrs. Lou Flanigan) representing 50 shares, in favor of the resolu-

tion; F. D. O'Neill, representing 175 shares, in favor; C. B. McCarthy, representing 65 shares; and J. B. Fitzgerald, representing 65 shares, in favor of the resolution.

"No other business being before the meeting, on motion adjourn.

> "FRANK D. O'NEILL.
> "J. J. FLANIGAN,
> "Prox. MRS. LOU FLANIGAN.
> "J. B. FITZPATRICK.
> "C. B. McCARTHY."

The minutes of the directors' meeting of April 6 show an attempt to substitute O'Neill for Brophy as a director, and the former afterward acted and voted as such. On the day before the stockholders' meeting of April 6, McCarthy called on Mrs. Flanigan and showed her the letter from her husband, together with the proxy. The latter document was present, on the table, during the stockholders' meeting and was then filed with other papers of the company. As to what took place at the meeting, O'Neill testified as follows: "I explained to Mrs. Flanigan and those there that these men felt they were entitled to certain remuneration and that it had been decided by attorneys and others that they were entitled to $5,000 in stock, with the understanding that they would proceed to promote and further and make a success of the business and settle all our little differences and everything else; and, for general welfare of the business, we were granting these men that amount of stock, not merely for the services they had rendered, but with the understanding that they would then take the position of promoters and promote the business to a final success which they have not done to this time." After the meeting twenty-five shares of stock were issued to McCarthy by certificate No. 12, and twenty-five to Fitzpatrick by certificate No. 11. On July 17, 1907, a stockholders' meeting was held at Miles City, at which McCarthy voted all of his shares without objection. Certain by-laws were adopted, by one of which it was provided that the number of directors should be three. A president and general manager,

vice-president, secretary and treasurer, and three directors were elected. One of the by-laws adopted reads as follows. "No stock of this company now in the treasury shall be sold or disposed of to any person for any price or for any purpose except by a vote of the majority of the stock outstanding, at a meeting regularly called for that purpose, and no stock in the treasury shall in any case be sold for less than par." At a stockholders' meeting held on August 5, 1907, at Butte, Judge McHatton, as proxy for Fitzpatrick, voted all of the latter's stock without objection. The stockholders at this meeting ratified the proceedings had at Miles City on July 17, again elected a board of directors and a president and general manager, authorized the president to sign checks and pay the current expenses of the company, and resolved that certain payments be made upon a mortgage against the company, held by the First National Bank of Miles City. On December 2, 1907, Fitzpatrick purchased of McCarthy, for a valuable consideration, twenty-three of the twenty-five shares of stock evidenced by certificate No. 12, and on January 16, 1908, these twenty-three shares were assigned to him by indorsement on the back of the certificate. The stock was purchased as an investment. On January 20, 1908, O'Neill and Flanigan purported to hold a directors' meeting at which they ordered certificates Nos. 11 and 12 canceled. On March 18, 1908, O'Neill, as president, and Flanigan, as secretary, notified McCarthy and Fitzpatrick that the stock had been canceled. On April 9, 1908, Fitzpatrick presented certificate No. 12 to Flanigan, as secretary, with the request that the stock be transferred in accordance with the assignment thereof, and Flanigan refused, stating that it was canceled. ·

1. While some suggestion is made in the brief of counsel for the appellants that the plaintiff is not in a situation to invoke the aid of a court of equity, the point does not appear to be insisted upon; and we are satisfied, moreover, that under the circumstances of this case, it is not well taken. In their excellent [1]    work on Private Corporations, volume 3, section 605, Messrs. Clark and Marshall thus express the rule: "There are

43 Mont.—36

some cases in which it has been held that a suit in equity will not lie to compel a corporation to register a transfer on its books and issue a new certificate to the transferee, on the ground that there is an adequate remedy at law by an action to recover damages for its refusal to recognize and make the transfer. This view, however, is contrary to the overwhelming weight of authority. An action for damages does not always afford an adequate remedy for refusal of a corporation to recognize a person as a stockholder, and it is well settled, therefore, that if a corporation wrongfully refuses to recognize and register a valid transfer of stock, and issue a new certificate to the transferee, he may maintain a bill in equity to compel it to do so.'' And see our own case of *Barker* v. *Montana Gold etc. Co.,* 35 Mont. 351, 89 Pac. 66.

Counsel also says: ''After reading the pleadings and the evidence, the court will observe that the material issue of fact involved herein is: Was the vote of the stockholders in favor of paying C. B. McCarthy and J. B. Fitzpatrick for promotion services induced and secured upon the supposition that the company was legally liable therefor?'' And again: ''As a matter of law, is, or was, the company liable to its promoters for services in creating it?'' We find nothing in the record to justify a finding that McCarthy and Fitzpatrick induced the stockholders to vote in favor of the issuance of stock to them by any claim that the corporation was legally liable for promotion services, or that any threats were made which impelled the stockholders to vote contrary to their convictions in the matter. We find no evidence of deceit or misrepresentation on the part of McCarthy and Fitzpatrick. On the contrary, they appear to have been very frank and open in the premises, submitting to the judgment of Judge McHatton and Mr. Sanner when advised that they could not hold the 345 shares, and when at the suggestion of the attorneys they were invited to name a sum which would be satisfactory to them for their services, they named an amount which was regarded by all present as reasonable and proper. The testimony of the appellant O'Neill himself is amply sufficient to show that the issuance of the two certificates Nos. 11

and 12 was the result of an arrangement which was perfectly agreeable and satisfactory to all present at the stockholders' meeting of April 6, 1907. McCarthy fully and fairly stated the facts to Flanigan and the latter executed the proxy to his wife with full knowledge that his stock was to be voted in favor of the issuance of the stock in dispute.

It is not necessary to decide here whether there is any liability on the part of a corporation to its promoters in the absence of an express promise by it after organization. On April 6, 1907, [2] the Open Range Sheep Company was fully organized, although all of its capital stock had not been subscribed. No question as to the rights of subsequent stockholders having no knowledge of the issuance of the stock is before us. All of the then stockholders had knowledge that the stock was about to be issued and all agreed to the issuance. No stockholder was misled or deceived. All agreed that the amount issued was reasonable. Under these circumstances we are of opinion that the corporation could legally issue stock in payment for services performed in its promotion and organization, and that the issuance of such stock must be deemed to have been upon sufficient consideration. (See 1 Clark & Marshall on Private Corporations, sec. 103; *Hayward* v. *Leeson*, 176 Mass. 310, 320, 57 N. E. 656, 49 L. R. A. 725; *Franklin Fire Ins. Co.* v. *Hart*, 31 Md. 60; *Western Screw & Mfg. Co.* v. *Cousley*, 72 Ill. 531.)

2. But it is contended that the stock could not be legally issued by authority of the stockholders. Appellants maintain that the directors alone possessed the power to bind the corporation [3] in this regard. Section 3833, Revised Codes, provides that the corporate powers, business and property of all domestic corporations must be exercised, conducted and controlled by a board of directors. But it is not the universal rule that the corporation must act exclusively through its board of directors. "Formal action is often dispensed with, even in the most important matters, where all the members of the corporation, including the shareholders and directors, are present and concur, although there is no formal vote either of the shareholders or of the directors." (10 Cyc. 761; *Lemars Shoe Co.* v. *Lemars*

*Shoe Mfg. Co.*, 89 Ill. App. 245.) In the case of *Eureka Iron & Steel Works* v. *Bresnahan*, 60 Mich. 332, it was held that a chattel mortgage agreed upon and assented to by all the directors and stockholders of a corporation assembled together, and drafted and executed in their presence, was valid, notwithstanding "there was no formal action, or the record of any action taken, carried on the records of the company authorizing the making of the mortgage." Perhaps the leading case on this subject is *Union Pac. Ry. Co.* v. *Chicago etc. Ry. Co.*, 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265. In the opinion prepared by the late Chief Justice Fuller, it appears that the executive committee of the Union Pacific Railway Company passed a resolution approving a certain contract and authorizing the president of the company to execute it; that afterward the stockholders at their regular annual meeting voted to approve the contract and the action of the executive committee relative thereto. The board of directors never formally acted. The parties to the contract immediately entered upon its execution. The court summarily disposed of the matter in the following language: "Appellants contend that the action of the stockholders and the executive committee was ineffectual because the board of directors was the only body that could authorize the president and secretary to make the contract. The contract appearing on its face to have been duly executed, and the parties having entered upon its execution, necessarily with the full knowledge on the part of the board of directors of the Pacific Company, the board would be presumed to have ratified it, although it in fact took no affirmative action in the matter."

The case at bar is even stronger than the federal case in favor of the validity of the action of the stockholders and the ratification of their act by the board of directors. The record shows that at the time this resolution was taken the corporation had not adopted any by-laws, but when by-laws were finally adopted, on July 17, 1907, it was expressly provided that no treasury stock should be sold or disposed of except by a vote of the majority of the outstanding stock. This by-law discloses the attitude of the corporation in the matter of disposal of stock. The

minutes of the several meetings, heretofore quoted, show that the stockholders of the corporation performed many of the [4] ordinary functions of management usually left to the directors. At the meeting at which the stock was voted to McCarthy and Fitzpatrick every outstanding share of stock was duly represented and voted in favor of O'Neill's motion; every director who held any stock was present, save Flanigan; and if we assume that O'Neill was properly elected as a director in place of Brophy (a matter which he may not question after having acted as such), then a majority of all the directors was present and assenting. The fact that McCarthy and Fitzpatrick also voted their stock is immaterial, for the reason that the result would have been the same had they not done so. In addition to the foregoing we have the fact that this stock was subsequently twice voted without objection at stockholders' meetings at which Flanigan and O'Neill were both present. Under these circumstances we are satisfied that it would be altogether inequitable for this court to declare these two certificates of stock invalid as having been issued without authority.

3. The fact that the by-laws provided that none of the officers of the corporation should receive any salary or compensation for any services rendered or to be rendered has no bearing upon the questions we have under consideration.

4. The stock having been legally issued upon a sufficient [5] consideration, the attempt to cancel the certificates was a nullity.

5. In view of the fact that the court below found all of the [6] issues in favor of the plaintiff, we find nothing in the record to justify the conclusion that he is not invoking the aid of the court "with clean hands."

We have examined the other specifications of error but find nothing to warrant a reversal.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.