KIRKUP, RESPONDENT, *v.* ANACONDA AMUSEMENT CO., APPELLANT.

(No. 4,309.)

(Submitted March 10, 1921. Decided April 11, 1921.)

[197 Pac. 1005.]

*Corporations—Promoters' Contracts—Stock—Void Issuance—Novation—Complaint—Insufficiency.*

Corporations—Liability on Promoter's Contract.
1. A contract between promoters under the terms of which one of them agreed to sell, at par, less a certain commission, expenses, *etc.*, shares of stock to be issued by a corporation after its organization, did not *ipso facto* by its incorporation become the contract

---

1. Liability of corporation to third parties on promoter's contracts, see notes in 13 Am. St. Rep. 28; 8 Ann. Cas. 262; Ann. Cas. 1916C, 105.

of the company, since, to bind it, formal action by its board of directors looking to its assumption or adoption was necessary, and a corporation cannot be bound by contracts made in its behalf before it comes into existence.

Same—Assumption of Promoters' Contract.

2. A corporation may, after its creation, assume or adopt a contract made by its promoters prior thereto, if within its corporate powers and not otherwise objectionable.

Same—Liability on Contracts—How Assumed.

3. A corporation cannot be held liable for preliminary contracts made by its promoters authorized by a majority of its incorporators or stockholders, but is only bound on such contracts as are made by its board of directors acting within the scope of their powers or by ministerial officers empowered to make them.

Same—Issuance of Stock—When Invalid.

4. Under section 10, Article XV, Constitution, and section 3894, Revised Codes, as amended by Chap. 89, Laws of 1917, a corporation cannot issue its stock except for labor done, services performed or money and property actually received. Plaintiff's complaint in his action to compel a corporation to issue and deliver to him certain shares of its stock under a contract with its promoters prior to its organization, showed that at the time it was made no labor could have been done or services performed for it, not having been then in existence, and the parties making it had no legal right to make a disposition of the company's capital stock after becoming a legal entity. *Held,* that the pleading did not state a cause of action.

Same—Issuance of Stock at Discount Prohibited.

5. A corporation cannot issue its shares of stock in the first instance at a discount.

Pleading—Contracts—Novation—Essentials.

6. In pleading a novation the plaintiff must allege the following essential elements: A previous valid obligation; the agreement of all the parties to the new contract; the extinguishment of the old one, and the validity of the new one; the question whether the facts alleged constitute a novation being one of law for the court's decision.

Corporations—Promoters' Contracts—Novation—Complaint—Insufficiency.

7. Under the above rule, *held* that, failing to allege either that defendant company agreed that the contract claimed to have been made with its promoters should be its own, with the understanding that the original obligor should be released, or that it adopted or agreed to carry out the terms and conditions of the contract in substitution of the original obligor, agreed to by the parties to the original contract, the complaint did not state a cause of action in novation.

*Appeals from District Court, Deer Lodge County; Geo. B. Winston, Judge.*

ACTION by John T. Kirkup against the Anaconda Amusement Company. From a judgment for plaintiff and an order

denying its motion for a new trial, defendant appeals. Reversed. with direction to enter judgment in favor of defendant.

*Mr. John W. James, Mr. W. H. Trippet* and *Messrs. Rodgers & Rodgers,* for Appellant, submitted an original brief and a supplemental brief; *Mr. James* and *Mr. H. W. Rodgers* argued the cause orally.

Whatever may be said as to the validity of a contract such as this between the original parties thereto, we believe it to be true that, viewed in the proper light, the contract is such a one as could not be assumed by the defendant corporation without violating plain statutory rules as to the sale of the capital stock of a corporation, and further that, if assumed by it, it would be contrary to public policy. The rule is that a corporation cannot issue its shares in the first instance at a discount, or except upon an agreement that they shall be paid for at their full value. In the case at bar it is quite apparent that if the defendant corporation assumed the obligations contained in said contract to be performed by A. Mandoli and May Amy Mandoli, it would have to agree to issue its stock at a ten per cent discount. (*Williams* v. *Evans,* 87 Ala. 725, 6 L. R. A. 218, 6 South. 702; *Gillett* v. *Chicago Title & Trust Co.,* 230 Ill. 373, 82 N. E. 891; *Zelaya Min. Co.* v. *Meyer,* 28 N. Y. St. Rep. 759, 8 N. Y. Supp. 487; *Sturges* v. *Stetson,* 1 Biss. 246, 23 Fed. Cas. No. 13,568; *Upton* v. *Tribilcock,* 91 U. S. 45, 23 L. Ed. 203 [see, also, Rose's U. S. Notes]; *Dunn* v. *Howe,* 96 Fed. 160; *Rolapp* v. *Ogden etc. R. Co.,* 37 Utah, 540, 110 Pac. 364; *Scott* v. *Abbott,* 160 Fed. 573, 87 C. C. A. 475; *In re Duryea Power Co.,* 159 Fed. 783.)

The enforcement of the contract sued upon in this action would be to violate the rule that capital paid in and promised is a fund which the trustees cannot squander or give away. (*Upton* v. *Tribilcock, supra; Fogg* v. *Blair,* 139 U. S. 118, 35 L. Ed. 104, 11 Sup. Ct. Rep. 476; *Sawyer* v. *Hoag,* 17 Wall. (U. S.) 610, 21 L. Ed. 731; *County of Morgan* v. *Allen,* 103 U. S. 498, 26 L. Ed. 498 [see, also, Rose's U. S. Notes];

*Goebic Inv. Co.* v. *Iron Chief Min. Co.,* 78 Wis. 427, 23 Am. St. Rep. 417, 47 N. W. 726.)

The complaint shows that the plaintiff's alleged cause of action is upon a novation of the contract sued upon in this action, which contract was originally entered into by and between the plaintiff and the Mandolis. To have any claim or cause of action against the defendant, the plaintiff must first allege and prove that the defendant company was by a novation of the contract substituted in place of the Mandolis. To constitute a novation by the substitution of a new debtor there must be a mutual agreement to that effect between the parties, and the original debtor must be released from his obligation. (*McAllister* v. *McDonald,* 40 Mont. 375, 106 Pac. 882; *Carpy* v. *Dowdell,* 131 Cal. 495, 63 Pac. 778; *Hanson* v. *Nelson,* 82 Minn. 220, 84 N. W. 742; *Johnson* v. *Rumsey,* 28 Minn. 531, 11 N. W. 69; *Cornwell* v. *Megins,* 39 Minn. 407, 40 N. W. 610; *Young* v. *Benton,* 21 Cal. App. 382, 131 Pac. 1051.) As a complaint upon a novation of the contract in question the pleading was so lacking in any statement of facts showing a novation of said contract that a general demurrer thereto should have been sustained. (29 Cyc. 1139.)

*Messrs. Kremer, Sanders & Kremer* and *Mr. John A. Goeneveld,* for Respondent, submitted a brief and one in reply to appellant's supplemental brief; *Mr. Alf. Kremer* argued the cause orally.

It is a general rule of corporation law relating to promotion contracts that where promoters enter into an agreement *inter sese* looking to the creation and organization of a corporation, and providing for certain acts and things to be done by the parties thereto after the corporation comes into existence, and the corporation, thereafter created and in existence, and pursuant to such agreement, takes title to property and otherwise accepts the benefits of the agreement, with knowledge of the contract, such corporation is thereupon liable under and bound by such agreement. This is on principle of law analogous to adop-

tion and ratification, and the original parties thereto are thereby discharged from liability *inter sese.* In other words, without an express novation in accordance with statutory provisions the corporation becomes by operation of law the proper party to sue and be sued upon the contract. (*Wall* v. *Niagara Min. & S. Co.,* 20 Utah, 474, 59 Pac. 399; *Seymour* v. *Spring Forest Cemetery Assn.,* 144 N. Y. 333, 26 L. R. A. 859, 39 N. E. 365; *Expansion Gold Min. & L. Co.* v. *Campbell,* 62 Colo. 410, 163 Pac. 968; *Weathersby* v. *Texas & Ohio Lumber Co.,* 107 Tex. 474, 7 A. L. R. 1440, 180 S. W. 735.)

Counsel's position that the defendant is not a proper party to the action, on the ground that there is no novation, no express promise to pay by the defendant, and that the defendant was not a party to the promotion contract, is incorrect. The law peculiar to corporations is that such a contract as the one involved here, where adopted and the benefits received by the corporation after it has come into existence, as alleged in the complaint, by corporate action, is binding on the corporation as clearly as if entered into by the corporation itself, and therefore the corporation is the proper party defendant. (1 Thompson on Corporations, 2d ed., sec. 95.) In *Deschamps* v. *Loiselle,* 50 Mont. 565, 148 Pac. 335, the court held that the corporation, in a similar promotion contract, was the proper party plaintiff, and not the promoters. Conversely, the corporation is the proper party defendant, and not the promoters. (See, also, 10 Cyc. 264, 265; 7 R. C. L. 75, 80, 81, for a general discussion of the subject.) There can be no doubt of the corporate liability for work done and services performed after incorporation for and on behalf of the corporation, but in this case plaintiff also sues for services performed in perfecting incorporation.

This court has held in the cases of *Ames & Frost Co.* v. *Heslet,* 19 Mont. 188, 61 Am. St. Rep. 496, 47 Pac. 805, and *Prudential Securities Co.* v. *Three Forks etc. R. Co.,* 49 Mont. 567, 144 Pac. 158, that the trust-fund doctrine as illustrated

by several of the cases cited in appellant's brief is not the law in this state.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action for damages for alleged breach of contract. From the contract which is made a part of the complaint, it appears that it was entered into on the twenty-sixth day of July, 1915, between A. Mandoli and May Amy Mandoli, as parties of the first part, and John T. Kirkup, the plaintiff herein, as party of the second part. The terms of the contract are substantially as follows: It was agreed between the parties that a corporation should be formed to be known as the "Anaconda Amusement Company," with a capital stock of $55,000, divided into 5,500 shares of the par value of ten dollars each; that the first parties, the Mandolis, should sell to such company after its incorporation two certain lots situated in the city of Anaconda and receive as consideration therefor 1,350 shares of the capital stock of the corporation so to be organized. It is provided in the contract that the remaining 4,150 shares of the capital stock of the company should be sold at par by the plaintiff, Kirkup, less a commission and promoter's expense of ten per cent of the par value of the stock, the moneys arising from the sale of the stock, less commission, to be used in the erection of a theater building upon the lots so to be conveyed by the Mandolis to the corporation. Further, it was agreed that the proceeds of the sale of the stock should remain intact in bank in the name of the corporation until the sum of $37,350 was realized, at which time the party of the second part, the plaintiff, Kirkup, was to be entitled to the remaining 415 shares of the capital stock of the company, whether sold by him or not; specifically, that after the sum of $37,350 had been realized from the sale of the stock for the purpose of constructing the theater building, Kirkup was to have the option to sell the remainder of the stock at par and take the proceeds thereof for his commission, or to have stock issued for his own use

and benefit representing the remaining authorized capitalization of the company.

From the second amended complaint it appears that the defendant company was incorporated as contemplated in the contract, and 1,350 shares of its capital stock were issued and delivered by the corporation to the Mandolis, in consideration whereof a deed for the lots described in the contract was executed and delivered to the defendant company; and thereafter the plaintiff devoted his time and attention to the sale of the remaining 4,150 shares of the unissued capital stock of the corporation pursuant to such contract until on or about the first day of April, 1916, at which time there had been sold 770 shares, the money for which had been paid to and received by the corporation and stock certificates by it issued. It is alleged that the defendant corporation was advised of and gave recognition to the plaintiff's contract with the Mandolis until on or about the fifteenth day of April, 1916, at which time it refused to further acknowledge the contract and declared it at an end. It is averred, "that it was agreed and understood, by the terms of said contract that the party of the second part, plaintiff above named, should proceed to sell the said 4,150 shares of the capital stock of the Anaconda Amusement Company at the price of ten dollars per share, and that the said Anaconda Amusement Company should receive therefor the amount of $37,500, and it was further agreed and understood that ten per cent of the sale price of said stock, to-wit, $4,150, should be retained by the said party of the second part for his commissions on the sale of said stock and all expenses in connection with the organization and promotion of said company and the sale of the said stock, including attorney's fees, printing, advertising and fees of incorporation; or, at plaintiff's option, he was to receive 415 shares of the capital stock of the Anaconda Amusement Company upon the sale of $37,500 of the par value of said stock."

In an endeavor to plead a novation or an assumption of the contract so as to hold the defendant liable in damages for a

breach thereof, allegation is made in plaintiff's complaint as follows: "That immediately after the organization of the Anaconda Amusement Company the said defendant corporation acted with this said plaintiff in an endeavor to carry the purpose of said contract into effect; that the said defendant corporation had knowledge of said contract and did receive moneys from the said plaintiff and did issue its stock therefor under the terms of said contract, and did agree with plaintiff to comply with the terms and conditions of said contract, and upon the sale by plaintiff of said 4,150 shares of the capital stock of the said defendant at the price of ten dollars per share, ten per cent thereof, to-wit, $4,150 should be paid over and delivered to the said plaintiff for his commissions on the sale of said stock and all expenses in connection with the organization and promotion of the said company and the sale of said stock, including attorney's fees, printing, advertising and fees for incorporation; that the said defendant corporation did accept the benefits of said contract; that the said defendant corporation did agree to said contract, and did recognize the said plaintiff as being entitled to the benefits to inure to him under the terms of said contract up to and including the first day of April, 1916, at which said time the said defendant corporation advised this said plaintiff that it would receive no further money from him for the sale of stock after the fifteenth day of April, 1916, and did advise said plaintiff that he was not entitled to receive any sum of money whatsoever from said defendant corporation, and that he was not entitled to receive any stock whatsoever from the said defendant corporation."

The defendant interposed a demurrer to such complaint, alleging that it does not state facts sufficient to constitute a cause of action; that there is a defect of parties in that A. Mandoli and May Amy Mandoli should have been parties to said action; and further, that the complaint is ambiguous upon the ground, among others, that it cannot be determined therefrom whether or not there has been a novation of the contract and the Anaconda Amusement Company substituted in place

and stead of A. Mandoli and May Amy Mandoli; that the complaint leaves it ambiguous as to whether plaintiff was to receive the sum of $4,150 or 415 shares of the capital stock of the company; and further, that the complaint is unintelligible and uncertain for the same reasons. The demurrer was overruled and the defendant filed its answer. Issues being joined, the case was tried to a jury, defendant's motion for a nonsuit and for a directed verdict were denied, and the trial resulted in a verdict in favor of the plaintiff wherein his damages were assessed at $4,150 without interest. Judgment was entered in favor of the plaintiff for the amount of the verdict, together with costs. The appeal is from the judgment and from an order denying defendant's motion for a new trial.

Twenty-one specifications of error are assigned, but one of which will require consideration from our view of the case in order to dispose of it on its merits, namely: Did the court err in overruling defendant's demurrer to the second amended complaint? This question is presented by the twenty-first assignment of error.

Clearly, the contract sued upon and for breach of which [1] damages are sought is not the contract of the defendant, and it cannot be held liable thereon unless an assumption of its terms and obligations is pleaded and proven or a novation affirmatively shown to exist.

It is contended by plaintiff's counsel that the contract made the basis of this action is a promoter's contract, and in consequence that different principles should be applied, *i. e.*, that the usual contract law relating to novation and substitution has been abrogated as regards promoters' contracts. From an examination of the authorities we do not agree with plaintiff's contention. It has been held by many of the courts that whenever the promoters of a corporation, in advance of its incorporation, enter into a contract intended to inure to the benefit of the company to be organized, and the company, after coming into being, recognizes, assumes and takes the benefit of such contract, it will be bound to perform it on the familiar prin-

ciple of the law of contracts that one who adopts the benefits of an act which another volunteers to perform for him, or in his behalf, is bound to take the burdens with the benefits. But none of the authorities go to the extent of holding that a contract between individuals, even though promoters of a corporation and for its supposed benefit, shall become the contract of the corporation thereafter formed and enforceable against it, independent of affirmative action taken in recognition thereof by the corporation itself. It is our opinion that a promoter's contract as such cannot, upon any theory, *ipso facto* by the incorporation of the company in contemplation, become the contract of the corporation. The legal entity itself must act in its corporate capacity before it shall be held liable, and it cannot assume the obligations of an *ultra vires* contract made by its promoters any more than it could legally initiate such a contract. In the absence of statute, a corporation will be held liable for services rendered by its promoters before incorporation only when by express action taken after it becomes a legal entity it recognizes or affirms such claim; and a mere silence of the board of directors or failure to object when claim is mentioned is not such an assumption or adoption as will bind the corporation. (*Cushion Heel Shoe Co.* v. *Hartt,* 181 Ind. 167, 50 L. R. A. (n. s.) 979, 103 N. E. 1063; *Tift* v. *Quaker City Nat. Bank,* 141 Pa. St. 550, 21 Atl. 660.) "It is soon enough for corporate bodies to enter into contracts encumbering their property when they are duly organized * * * and have their chosen impartial directors to conduct their business." (*New York etc. R. Co.* v. *Ketchum,* 27 Conn. 179.)

The contract cannot be considered that of the corporation upon the theory of ratification, because a ratification is never valid unless, at the time of ratifying the act done, the principal has power to confer authority for such an act (Rev. Codes, sec. 5427), and no unauthorized act can be made valid, retroactively, to the prejudice of third persons without their consent. (*Id.,* sec. 5428.)

The principle of estoppel is not involved in the case before us, but if it were, "it is difficult to understand how a corporation could be estopped by accepting benefits which it had no power to reject, without uncreating itself." (10 Cyc. 265.) The general rule, and that which we deem applicable in this case, is that a corporation cannot be bound by contracts made in its behalf before it comes into existence. Until a certificate of incorporation has been issued, it has no being, franchises or faculties. Its promoters or those engaged in bringing it into existence are in no sense identical with the corporation, nor do they represent it in any relation of agency, and they have no authority to enter into preliminary contracts binding upon the corporation. (8 R. C. L., sec. 59; *Franklin Fire Ins. Co.* v. *Hart*, 31 Md. 59; *Safety Deposit Life Ins. Co.* v. *Smith*, 65 Ill. 309; *Gent* v. *Manufacturers' etc. Ins. Co.*, 107 Ill. 652; *Battelle* v. *Northwestern Cement etc. Co.*, 37 Minn. 89, 33 N. W. 327; *Munson* v. *Syracuse etc. Ry. Co.*, 103 N. Y. 58, 8 N. E. 355.) The correct rule is that enunciated by the supreme court of Texas, thus: "Upon the question as to the liability of the corporation growing out of contracts made on its behalf by its promoters, there is considerable diversity, and some conflict of opinion. But there are some propositions affecting this question upon which the authorities seem to be in substantial accord. The promoter, though he purport to act on behalf of the projected corporation, and not for himself, cannot be treated as agent, because the nominal principal is not then in existence; and hence, when there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced." (*Weatherford etc. Ry. Co.* v. *Granger*, 86 Tex. 350, 40 Am. St. Rep. 837, 24 S. W. 795. To the same effect, see, also, *Morrison* v. *Gold Mt. etc. Min. Co.*, 52 Cal. 306; *New York etc. R. Co.* v. *Ketchum, supra; Gent* v. *Manufacturers' Ins. Co.*, 107 Ill. 652; *Sellers* v. *Greer*, 172 Ill. 549, 40 L. R. A. 589, 50 N. E. 246; *Park* v. *Modern Woodmen of America*, 181 Ill. 214, 54 N. E. 932; *Smith* v. *Parker*, 148 Ind. 127, 45 N. E.

770; *Carey* v. *Des Moines etc. Min. Co.*, 81 Iowa, 674, 47 N. W. 882; *Abbott* v. *Hapgood*, 150 Mass. 248, 15 Am. St. Rep. 193, 5 L. R. A. 586, 22 N. E. 907; *Battelle* v. *Northwestern Cement etc. Co.*, *supra; York Park Bldg. Assn.* v. *Barnes*, 39 Neb. 834, 58 N. W. 440; *Bash* v. *Culver Gold Min. Co.*, 7 Wash. 122, 34 Pac. 462.) However, the corporation may legally adopt or as-[2] sume its promoter's contracts and thus become liable thereon both in law and in equity not merely for the benefits received, but on the contract itself. (*Davis* v. *Montgomery Furnace etc. Co.*, 101 Ala. 127, 8 South. 496; *Little Rock etc. R. Co.* v. *Perry*, 37 Ark. 164; *Perry* v. *Little Rock etc. R. Co.*, 44 Ark. 383; *Chater* v. *San Francisco Sugar Refining Co.*, 19 Cal. 219; *Scadden Flat Gold Min. Co.* v. *Scadden*, 121 Cal. 33, 53 Pac. 440; *Colorado Land etc. Co.* v. *Adams*, 5 Colo. App. 190, 37 Pac. 39; *Arapahoe Inv. Co.* v. *Platt*, 5 Colo. App. 515, 39 Pac. 584.) The adoption of such a contract is on the theory that the contract made by the promoters is a continuing offer on the part of the other party to the contract unless withdrawn by him, and that it may be accepted and adopted by the corporation after it is created. (*Deschamps* v. *Loiselle*, 50 Mont. 565, 148 Pac. 335.)

In the case of *Fitzpatrick* v. *O'Neill*, 43 Mont. 552, Ann. Cas. 1912C, 296, 118 Pac. 273, the only case heretofore decided by this court brought to our attention dealing with promoters' contracts, Mr. Justice Smith said: "It is not necessary to decide here whether there is any liability on the part of the corporation to its promoter in the absence of an express promise by it after organization. * * * No question as to the rights of subsequent stockholders having no knowledge of the issuance of the stock is before us. All of the then stockholders had knowledge that the stock was about to be used and all agreed to the issuance. No stockholder was misled or deceived. All agreed that the amount issued was reasonable. Under these circumstances, we are of opinion that the corporation could legally issue stock in payment for services performed in its promotion and organization and that the issuance of such stock must be deemed to have been upon sufficient consideration. * * * But it

is contended that the stock could not be legally issued by authority of the stockholders. Appellants maintain that the directors alone possess the power to bind the corporation in this regard. * * * It is not the universal rule that the corporation must act exclusively through its board of directors. 'Formal action is often dispensed with, even in the most important matters, where all the members of the corporation, including the shareholders and directors, are present and concur, although there is no formal vote either of the shareholders or the directors.' (10 Cyc. 761; *Lemars Shoe Co.* v. *Lemars Shoe Mfg. Co.,* 89 Ill. App. 245.) The authority of this case, cited and relied upon by the plaintiff, it will readily be seen, has no application to the case under consideration, as there is no contention made by· allegations of the complaint or otherwise that the contract was assumed or adopted by all of the directors of the corporation, or all of its stockholders. Were such facts made to appear, a different conclusion would doubtless be reached upon this phase of the case, even in the absence of formal action by the board of directors or stockholders.

"Not only is it impossible for the corporation to become liable before it comes into existence, but its mere incorporation will not, of itself, charge it with liability for contracts which prior thereto promoters purported to make in its behalf. The corporation, however, may enter into contracts based on agreements previously made; thus subscriptions to stock in a corporation thereafter to be formed amount to offers to the corporation which subsequently may be accepted by it; though until acceptance, the subscriber may withdraw. The principle governing other contracts intended to be made on behalf of the future corporation is the same. Though it cannot, when formed, ratify the action of the promoter, since it is an essential of ratification that the principal should have been in existence and capable of contracting at the time the agent acted, the corporation, either by formal action or without such action, if the contract is of the sort which requires no formality, may become bound as a party to the contract by adoption or novation. The

cases generally speak of the obligation of the corporation as created by adoption, but novation seems the more accurate term. If the assent of the corporation to the bargain is merely an adoption of it, the promoter apparently must still remain liable. But it seems more nearly to correspond with the intentions of the parties to suppose that when the corporation assents to the contract, it assents to take the place of the promoter—a change of parties to which the other side of the contract assented in advance. There would then be a novation which would discharge the promoter at the same time the corporation assumed the obligation." (1 Williston on Contracts, sec. 306, and cases cited in notes.) Such preliminary contracts, when within the corporate powers and not otherwise objectionable, may, by adoption but not otherwise, become the contracts of the corporation and be enforceable as such. (*Battelle* v. *Northwestern Cement etc. Co., supra; Munson* v. *Syracuse etc. Ry. Co., supra; Penn. Match Co.* v. *Hapgood,* 141 Mass. 145, 7 N. E. 22.)

[3] There is some authority for the proposition that the corporation is so liable where a majority of the incorporators authorized the contract, but it is difficult to understand the principle on which this conclusion rests, since after the corporation is *in esse,* it is not bound by contracts or engagements made by a majority of the stockholders; but is only bound by such as are made by its governing body, its board of directors or trustees acting within the scope of their powers and by ministerial officers created and empowered to make such engagements. (14 C. J. 282.) Section 3833 of the Revised Codes expressly declares: "The corporate powers, business and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three nor more than thirteen directors, *etc."* Mr. Chief Justice Brantly, speaking for this court in *Deschamps* v. *Loiselle, supra,* in considering the application and effect of this section of the statute, well said: "While it is entirely competent, indeed often necessary, for the directors to manage and conduct the business of the corporation through duly authorized

agents, the directors themselves are the agents ultimately responsible. They, therefore, cannot abdicate their duties nor permit others to act in their stead for the corporation or the stockholders. This would be in direct violation of the injunction of the statute, which, being exclusive, is also mandatory. If the construction of the agreement contended for by counsel and adopted by the trial court should be upheld, the statute would be set aside." It is manifest that a corporation cannot be held liable on contracts in consequence of oral expressions of individual stockholders, directors or officers made on the streets, in corner grocery-stores, saloons or elsewhere, unless express authorization has been given to the individual to act as the agent or mouth-piece of the corporation, and such authority to an individual, even though an officer of the corporation, may be conferred only by formal action taken by the corporation itself. (In principle, see *Williams* v. *Board of Commrs.*, 28 Mont. 360, 72 Pac. 755.) The corporation may thus generally confer authority through its by-laws regularly approved and adopted, or by resolution duly passed by its board of directors or by formal adoption or assumption.

Conceding that the corporation might, with propriety, after coming into existence, adopt the contract of its promoters as its own, yet necessarily such authority is limited to such contracts as the corporation itself is authorized to make. (1 Thompson on Corporations, sec. 98.) The purpose of the capital stock of a corporation is obvious and quite generally understood. The fact that by a certificate of incorporation the capital stock of a company is 'fixed at a certain amount does not of itself create anything of value. Its effect is simply to confer authority to issue capital stock to the amount stated, unimpaired in accordance with the provisions of the laws under which it comes into being with the purpose in view of raising the capital fixed. The power to issue its capital stock constitutes a corporate franchise. It may be exercised only with persons desiring to become stockholders; and a contract to purchase stock must be mutual. One claiming a right to the issuance

and delivery of capital stock in a corporation by subscription contract or other. agreement, or claiming the right of a stockholder by virtue of contract, must be in position to enforce his rights. The corporation must be in position to enforce the subscription agreement. By our organic law it is declared: [4] "No corporation shall 'issue stocks or bonds, except for labor done, services performed or money and property actually received." (Const., sec. 10, Art. XV.) This provision substantially has also been incorporated in our statutory law. (Sec. 3894, Rev. Codes, as .amended by Laws of 1917, Chap. 89.) The meaning of the language used in the Constitution is plain, unambiguous and needs no interpretation. If stocks or bonds be issued except "for labor done, services performed or money and property actually received," their issuance is in direct violation of the Constitution and of the statute and *ipso facto* invalid. (*Arkansas River Land Co.* v. *Farmers' Loan etc. Co.*, 13 Colo. 587, 22 Pac. 954.)

Plaintiff can maintain this action only by allegation and proof of contractual rights binding upon and enforceable against the corporation. This he has failed to do. On the contrary, it is affirmatively made to appear from the allegations of the complaint that plaintiff's demand is based upon an alleged right to the issuance and delivery of 415 shares of the capital stock of the corporation or $4,150, in violation of the constitutional mandate and of the statutes under which the corporation came into existence. It is obvious that at the time the contract was made no labor had been done, services performed or money or property actually received by the corporation, as the corporation had no existence. The parties to the. agreement had no legal right whatsoever as the promoters of the corporation or otherwise to make a binding contract for disposition of its capital stock after its becoming a legal entity, and the corporation itself could only legally issue its stock after the labor had been done or services performed to the reasonable value thereof in payment therefor, or for money or property in fact

received by the corporation reasonably worth the par value of such stock.

"The stockholders of every corporation shall be severally and individually liable to the creditors of the corporation in which they are stockholders, to the amount of unpaid stock held by them respectively, for all acts and contracts made by such corporation, until the whole amount of capital stock subscribed for shall have been paid in." (Sec. 3853, Revised Codes.) "All corporations for profit must issue certificates for stock when fully paid up, signed by the president and secretary, and may provide, in their by-laws for issuing certificates prior to the full payment, under such restrictions and for such purposes as their by-laws may provide." (Sec. 3854, Rev. Codes.) In the case of *Webster* v. *Webster Refining Co.*, 36 Okl. 168, 47 L. R. A. (n. s.) 697, 128 Pac. 261, the facts are similar to the case before us. It appears that the plaintiff therein was instrumental in organizing the defendant corporation. He had had many years of experience in building refineries and entered into an agreement with others who proposed to form the corporation, pursuant to which they were to pay him a salary as general manager during the construction of the plant, and $5,000 par value of the capital stock of the corporation for the use of his name, processes and knowledge in erecting a refinery. The minutes of the corporation disclosed a recognition of the contract on the part of the corporation, and the court, in considering the enforceability of such contract as against the corporation, said: "The case involves a construction of section 39 of Article IX of the Constitution (Williams' Constitution and Enabling Act, sec. 256), which provides as follows: 'No corporation shall issue stock except for money, labor done or property actually received to the amount of the par value thereof and all fictitious increase of stock or indebtedness shall be void. * * * ' In the case at bar the plaintiff does not contend that he paid the money for this stock. The labor which he performed was paid for by his salary as general manager; and there was, therefore, no

'labor done' for which the stock could be issued. Was there any 'property actually received' by the corporation for which it should have issued the stock? It is elementary that the plaintiff's name was not 'property actually received.' * * * The evil which this constitutional provision was designed to stop was the so-called practice of watering stock of a corporation; and it is both our duty and our disposition to give this statute its natural construction—the meaning which its words plainly disclose. The corporation is prohibited from issuing stock except for money, for labor done, or for property actually received to the amount of the par value thereof. These words have a very plain significance. They mean just what they say. * * * The Constitution provides that the corporation shall not issue its stock except for consideration equal to the par value thereof. This represents the public policy of the state. It is intended to bind the corporation. It is intended to protect the public. It is intended to put corporations upon a real substantial basis to prevent the watering of their stock. The Constitution is one instrument of the people. The courts are another. If the courts require a corporation to do that which the Constitution says shall not be done, the judicial arm is antagonistic to the Constitution itself; and it would seem to be a simple proposition that the courts will not compel that to be done which the Constitution prohibits doing. If this be true, then to permit damages for the refusal by the corporation to do it would be to punish it for refusing to do that which the law says shall not be done, and indirectly compel it to do that which is prohibited. * * * We believe, therefore, that under our Constitution, such an agreement is prohibited, and that the courts should not enforce it directly by compelling the issuance of the stock or indirectly by giving damages for breach of the contract.''

In the case of *Rodgers* v. *Gladiator Gold Mining etc. Co.,* 21 S. D. 412, 113. N. W. 86, the court there had under consideration pleadings as follows: "Plaintiff alleges that the defendant corporation was organized and is existing under and by

virtue of the laws of this state; that during 1900 and 1901 he performed certain services as an assayer and broker for and on behalf of the defendants at their special instance and request, for which they promised and agreed to give him certain shares of capital stock in the defendant corporation; that notwithstanding due demand therefor, defendants have failed and refused to deliver said stock; and that the highest market value of the stock during the period between such refusal and the date of the action was forty cents in one case and fifteen cents in the others. Without denying any of these allegations except as to the value of the stock, and 'while admitting that a promise was given the plaintiff for * * * shares of stock as alleged,' defendants averred 'that the promise was coupled with a condition precedent which the plaintiff has never performed or attempted to perform'; denying 'that plaintiff ever in good faith performed or acted as a broker for defendants' and allege 'that plaintiff's every act as a broker of defendant's stock has been hostile and inimical to the interest of these defendants.'"
In considering and applying a similar constitutional inhibition of the state of South Dakota (Art. XVII, sec. 8), the court said: "It is quite clear from the evidence that the contract made by the plaintiff with the mining corporations was clearly in violation of the section of the Constitution above referred to. He paid no money or property therefor, and the only services that he was to perform, apparently, were those to be personally performed for Crabtree individually in aiding him to dispose of the stock of the corporations and in making assays for him. Clearly, such a contract was not permissible under the provisions of our Constitution, and not within the powers of the trustees of the corporation to make. In the case of *Upton* v. *Tribilcock*, 91 U. S. 45, 23 L. Ed. 203 [see, also, Rose's U. S. Notes], the supreme court of the United States, in discussing this subject, said: 'The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for

the benefit of its creditors in the event of its dissolution. This
duty is a sacred one and cannot be disregarded.' (*Furber* v.
*Williams-Flower Co.,* 21 S. D. 228, 8 L. R. A. (n. s.) 1259, 111
N. W. 548.)    The contract in this case seems to have been made
with Crabtree as trustee and promoter and not with the corpo-
rations themselves.   *   *   *   If the contracts were construed
to be the contracts of the corporations, they were clearly made
in contravention and violation of the constitutional provisions,
and were therefore void.''

Generally, it is held by the courts, and it is our opinion, that
[5]   a corporation cannot issue its shares of stock in the first
instance at a discount or in any manner save and except for
full value or agreement to pay full value therefor.   (*Williams*
v. *Evans,* 87 Ala. 725, 6 L. R. A. 218, 6 South. 702; *Gillett* v.
*Chicago Title & Trust Co.,* 230 Ill. 373, 82 N. E. 891; *Rolapp*
v. *Ogden etc. R. Co.,* 37 Utah, 540, 110 Pac. 364; *Zelaya Min.
Co.* v. *Meyer,* 28 N. Y. St. Rep. 759, 8 N. Y. Supp. 487.)   In
the case of *Zelaya Min. Co.* v. *Meyer, supra,* the court said:
''It is a general rule of corporate law that the payment of
original stock must be made in cash, and that it cannot be
issued for less than the par value, as fixed by the charter.
(*Neuse River Nav. Co.* v. *Commissioners of Newbern,* 52 N. C.
275, 276; *People* v. *Troy House Co.,* 44 Barb. (N. Y.) 625, 634;
*Hatch* v. *Western Union Tel. Co.,* 9 Abb. N. C. (N. Y.) 430,
48 N. Y. Sup. Ct. 389.)   *   *   *   Corporations are creatures
of the state, intangible things, incapable of thought or action,
except in the fiction of the law, and courts must scrutinize the
conduct of those who manage them, and hold them to the strict
letter of the statute, particularly in matters pertaining to their
organization. If their inception is founded on error, it may
prove a poor foundation, ready to topple over and bury in-
nocent subscribers and creditors in their ruins.   If a corpora-
tion may solicit subscribers to its stock at seventy cents on
the dollar of its par value, what is to prevent it from doing
the same thing at any smaller rate its officers may designate?
The very idea suggests want of stability, sanctions fictitious

values, and leaves the corporation at its inception with a capital impaired. * * * A corporation so crippled cannot be expected to keep pace with live and solvent corporations, nor to yield returns in the shape of dividends upon a capital it never possessed.''

It is self-evident that the contract for breach of which damages are sought in this action is *ultra vires* were it considered the obligation of the corporation upon any theory. It could neither be legally entered into by the corporation in the first instance nor assumed by it when entered into by promoters in advance of its creation. It simply involves the contemplated depletion of the capital of the corporation to the extent of $4,150 or 415 shares.

If it was intended to plead a novation, under the second [6, 7] quoted allegation of the complaint hereinbefore set forth, still the complaint cannot stand, because the contract is *ultra vires*, and a novation is not sufficiently pleaded were it within the power of the corporation to adopt or approve the contract. A "novation is the substitution of a new obligation for an existing one." (Sec. 4958, Rev. Codes.) A "novation is made: 1. By the substitution of a new obligation between the same parties with intent to extinguish the old obligation," etc. (*Id.*, sec. 4959.) It "is made by contract, and is subject to all the rules concerning contracts in general." (*Id.*, sec. 4960; *McAllister* v. *McDonald*, 40 Mont. 375, 106 Pac. 882.) In every novation there are four essential requisites: 1. A previous valid obligation; 2. The agreement of all the parties to the new contract; 3. The extinguishment of the old contract; and, 4. The validity of the new one. It constitutes a new contractual relation and is based upon a new contract by all parties interested. (29 Cyc. 1130.) It may be accomplished as applied to the contract here involved in three ways: 1. By the substitution of a new obligation between the same parties with intent to extinguish the old obligation; 2. By the substitution of a new obligor in place of the old one with intent to release the latter; and, 3. By the substitu-

tion of a new obligee in place of the old one with intent to transfer the rights of the latter to the former. (29 Cyc. 1134.) The complaint must allege all the essential elements of a novation (29 Cyc. 1138), otherwise it is fatally defective as against a stranger to the original contract (the defendant) asked to respond in damages for its breach, unless it shall affirmatively appear that he has become bound by acquiescence, assumption or subsequent adoption of the contract indicating a release of the original obligor and reliance thereafter made on the third party (the defendant) substituted for complete performance. It must affirmatively appear that the plaintiff accepted the third party's agreement in substitution of the original contractual obligation of the Mandolis, and that the defendant corporation agreed thereto and assumed the same. (11 Standard Encyclopedia of Procedure, 994–1032.) Where the plaintiff relies upon a novation, all the essential elements of a contract of novation must be alleged. (29 Cyc. 1139.) The pre-existing obligation must be extinguished or there is not a novation, and a novation is never presumed. (20 R. C. L. 366.) Since the construction of a contract is ordinarily a matter for the court, it is for the court to say whether or not certain facts amount to an alteration or modification of the contract as a matter of law (11 Standard Ency. of Procedure, 1162), and in our view, such principle is equally applicable to a novation and the pleadings respecting the subject. It is our opinion that the complaint does not state a cause of action against the defendant, failing as it does to allege either that the defendant accepted and agreed to the contract as its own with understanding of the parties to release the original obligor, or that it adopted, approved or agreed to carry out the terms and conditions of the contract in substitution of the original obligor, agreed to by the parties to the original contract. Such an allegation we deem indispensable in order to hold the defendant *prima facie* liable in damages for a breach of the contract, notwithstanding the well-settled rule in this state that a complaint will be upheld if it states a cause of action

upon any theory. (*Wing* v. *Brasher, ante,* p. 10, 194 Pac. 1106, and cases cited.) We cannot go so far as to uphold a complaint in an action for damages because of alleged breach of contract, where the contract was executed with a stranger to the action and there is no direct allegation of substitution or novation, so as to *prima facie* show liability on the part of the defendant. Furthermore, it affirmatively appears that the contract is of such character as to terms, that the defendant could not legally have adopted it as its own, any more than it could enter into it in the first instance. This is fatal to plaintiff's alleged cause of action. The demurrer should have been sustained.

The judgment and order appealed from are reversed and the cause is remanded, with directions to enter judgment in favor of the defendant.

*Reversed and remanded, with directions.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper and Holloway concur.

Rehearing denied May 16, 1921.